**COMPUTERVISION CORPORATION,**
Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 90–284T.

United States Court of Federal Claims.

Sept. 9, 2004.

John S. Brown, George P. Mair, Donald–Bruce Abrams, and Matthew D. Schnall,

Bingham McCutchen LLP, Boston, Massachusetts, for the plaintiff.

Ellen C. Specker, Tax Division; Mildred L. Seidman, Chief, Court of Federal Claims Section; and Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C., for the defendant.

## OPINION

HORN, Judge.

In this tax case, both parties to this action agree that plaintiff Computervision Corporation is entitled to a refund of deficiency interest assessed and paid with respect to its 1982 tax year, but disagree as to the amount properly refundable to plaintiff. Computervision is seeking a refund of $3,818,707.55 in deficiency interest assessed and paid with respect to its 1982 tax year. Defendant believes plaintiff is entitled to a lesser amount of $2,997,761.42 in deficiency interest based upon a decision of the United States Tax Court in a related case.

In the present suit, plaintiff claims it is entitled to the greater amount of deficiency interest based on the principles of interest suspension and/or interest netting. Specifically, plaintiff contends that interest on its 1982 tax deficiency should be suspended from March 15, 1983 through August 2, 1985. Additionally, to the extent that interest is not suspended, plaintiff asserts that a net interest rate of zero, pursuant to 26 U.S.C. § 6621(d), should be applied to the periods during which its 1982 tax deficiency was offset by overpayments for its 1983 and 1984 tax years. See 26 U.S.C. § 6621(d) (2000) (hereinafter § 6621(d)).

In response, the defendant filed a motion to dismiss plaintiff's claims for interest suspension and interest netting. The defendant maintains that this court does not have jurisdiction over plaintiff's interest suspension claim because the claim is barred by the doctrine of substantial variance, which precludes a plaintiff from raising claims before a court that were not first presented to the relevant agency for administrative consideration. See W. Co. of N. Am. v. United States, 323 F.3d 1024, 1034 (Fed.Cir.2003). The defendant also contends that plaintiff's amended refund claim, which raises the issue of interest suspension and was filed after the expiration of the statute of limitations for filing new claims, cannot serve as the basis for this suit. Finally, the defendant argues that the principle of interest netting is not applicable to this case.

## FINDINGS OF FACT

During the periods at issue in this case, Computervision was a Delaware corporation with its principal place of business in Massachusetts. Computervision designed, manufactured, and sold computer-aided manufacturing products.

On or about September 14, 1983, Computervision filed a federal income tax return for the 1982 tax year indicating tax payments of $9,817,074.00 (including estimated payments and a credit of an overpayment for Computervision's 1981 tax year), a tax liability of $5,066,843.00, and a resulting overpayment of $4,750,231.00. Computervision elected to credit the overpayment to its tax liability for the 1983 tax year. The transcript for the plaintiff's 1982 tax year indicates that the amount actually credited to Computervision's tax liability for the 1983 year was $4,606,-074.44.00.[1]

On September 17, 1984, Computervision filed a federal income tax return for the 1983 tax year reporting tax payments of $7,606,-074.00 [2] (including estimated payments and the credit of the overpayment for the 1982 year), a tax liability of $276,798.00, and a resulting overpayment of $7,329,276.00. Again, Computervision chose to credit the overpayment to its tax liability for the following year, the 1984 tax year.

On July 2, 1985, Computervision filed a federal income tax return for the 1984 tax year indicating tax payments of

---

1. According to the plaintiff, $144,156.59 of the overpayment was credited instead to a 1983 employment tax liability incurred by Computervision.

2. The reported payments of $7,606,074.00 consisted of payments totaling $11,606,074.00, net of a refund of $4,000,000.00 previously requested on Form 4466.

$20,314,261.00 (including estimated payments and the credit of the overpayment for the 1983 year), a tax liability of $13,148,230.00, and a resulting overpayment of $7,166,031.00. After electing to credit the 1983 overpayment (including 100 percent of the amount credited forward from 1982) to 1984, Computervision requested a refund of the 1984 overpayment (again, including the entire amount of the credit from 1982). On August 2, 1985, the IRS paid Computervision a refund of $7,166,031.02, without interest.

After an audit of Computervision's 1982 tax return, the IRS issued an examination report, dated January 7, 1986, proposing a deficiency of $6,224,982.00 for the 1982 tax year.[3] During the course of the audit, the IRS determined that Computervision International, Inc. (CVI), a subsidiary of Computervision, had failed to qualify as a domestic international sales corporation[4] (DISC) for

its taxable year ending January 31, 1983.[5] A portion of the proposed deficiency for the 1982 tax year was attributable to the proposed disqualification of CVI as a DISC.

On January 30, 1986, Computervision filed Form 1139, Corporation Application for Tentative Refund, in which it carried back a net operating loss (NOL) from Computervision's 1985 tax year to the 1982 tax year. On April 11, 1986, Computervision submitted a protest to the District Director of Internal Revenue in Boston, Massachusetts regarding the IRS' position with respect to its 1982 taxable year, as outlined in the examination report. At a proceeding before the Boston Appeals Office of the IRS, Computervision and the IRS settled all the issues included in the 1982 examination report (the settled issues), except those relating to the DISC disqualification issue. As a result, the IRS revised the proposed income tax deficiency for Compu-

3. Computervision completed four Forms 872, Consent to Extend the Time to Assess Tax, which extended the period of limitations for assessments for the 1982 year to December 31, 1986; June 30, 1987; December 31, 1987; and June 30, 1988.

4. A domestic international sales corporation (DISC) is defined as follows:

§ 992. Requirements of a domestic international sales corporation
(a) Definition of "DISC" and "former DISC"
(1) DISC
For purposes of this title, the term "DISC" means, with respect to any taxable year, a corporation which is incorporated under the laws of any State and satisfies the following conditions for the taxable year:
(A) 95 percent or more of the gross receipts (as defined in section 993(f)) of such corporation consist of qualified export receipts (as defined in section 993(a)),
(B) the adjusted basis of the qualified export assets (as defined in section 993(b)) of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year,
(C) such corporation does not have more than one class of stock and the par or stated value of its outstanding stock is at least $2,500 on each day of the taxable year, and
(D) the corporation has made an election pursuant to subsection (b) to be treated as a DISC and such election is in effect for the taxable year.
26 U.S.C. § 992(a)(1) (1982) (hereinafter § 992(a)(1)).

5. According to plaintiff, during the relevant time period, CVI, a wholly-owned subsidiary of Computervision, served as a commission agent for Computervision's sales that generated qualified export receipts within the meaning of § 993(a), and was paid a commission pursuant to §§ 994(a)(2) and 994(b). On January 31, 1983, CVI paid $33,083,438.13 to Computervision for the purpose of reimbursing the company for certain expenses it incurred on CVI's behalf, purchasing all of the qualified export receivables then held by Computervision, and distributing the balance as a dividend to Computervision. On or about February 23, 1983, declaration of the dividend was confirmed by a consent vote executed by CVI's directors, and dated as of January 31, 1983, the date the dividend was paid.

The January 31, 1983 transactions formed the basis of the IRS' proposed disqualification of CVI as a DISC. According to the plaintiff, the IRS erroneously treated the January 31, 1983 transactions as ineffective until the precise amounts of the dividend, the reimbursement, and the receivables purchase were ascertained and recorded in the books of account of CVI and Computervision. As a result, CVI's payment on January 31, 1983 created a loan or receivable that was not a "qualified export asset" pursuant to § 993(b). According to the plaintiff, it was on these grounds that the IRS erroneously determined that CVI failed to comply with § 992(a)(1)(B) for the 1982 taxable year. The plaintiff argued that, at the end of tax year 1982, CVI did not have non-qualified export assets in excess of the amounts permitted by IRC § 992(a)(1)(B). Therefore, the plaintiff contended that the IRS' disqualification of CVI as a DISC was erroneous and improper.

tervision's 1982 year. Without including the 1985 NOL carryback, that amount came to $7,886,409.00. The 1985 NOL carryback tentatively eliminated $7,848,633.00 of the proposed income tax deficiency of $7,886,409.00 for the 1982 tax year, but it did not eliminate Computervision's liability for: 1) a deficiency of $37,776.00 attributable to investment tax credit recapture; and 2) "restricted" interest [6] that had accrued on the proposed, potential deficiency of $7,848,633.00 for the 1982 tax year from the due date of the 1982 return (March 15, 1983) to the due date of the 1985 return (March 15, 1986). In addition, the IRS assessed additional interest on both the restricted interest and the tax of $37,776.00 after March 15, 1986 through May 5, 1988.

On April 5, 1988, the IRS received a Form 870 signed by Computervision waiving the restrictions on assessment of the $37,776.00 tax deficiency attributable to investment tax credit recapture. On June 3, 1988, the IRS assessed tax in the amount of $37,776.00 for the 1982 tax year, along with deficiency interest in the amount of $4,095,974.42. The deficiency interest was computed based on the full amount of the proposed deficiency in tax of $7,886,409.00, from the date of the 1982 return to the date of the elimination of $7,848,633.00 of that proposed deficiency by the 1985 NOL carryback. The tax of $37,776.00 attributable to the recapture of investment tax credits was paid in full.

On June 8, 1988, Computervision received a bill, dated June 3, 1988, from the IRS for interest in the amount of $4,095,974.42 for the 1982 tax year. On April 28, 1989, Computervision paid $4,045,011.64 of the assessment. The remainder of the assessment was satisfied by prior payments made by Computervision on August 27, 1987, March 7, 1989 and March 10, 1989. Therefore, as of April 28, 1989, the entire interest assessment of $4,095,974.42 was paid.

The IRS also conducted an audit of Computervision's taxable years ending December 31, 1983, 1984, 1987 and February 5, 1988 (respectively, the "1983, 1984, 1987 and 1988 years"). Upon completion of the audit, on October 28, 1988, the IRS issued an examination report proposing deficiencies for those years, as well as for CVI's taxable year ending January 31, 1984. The proposed deficiency for CVI, and a portion of the proposed deficiencies for Computervision's 1983 and 1984 years (computed without regard to net operating loss carrybacks), were also attributable to the proposed disqualification of CVI as a DISC for its taxable years ending January 31, 1983 and 1984.

On August 4, 1989, Computervision filed a timely claim for refund, requesting a portion of the deficiency interest it had paid for its 1982 taxable year that was attributable to the DISC disqualification issue, $2,808,888.00 (the original refund claim).[7] As of April 4, 1990, the IRS had not acted on the original refund claim. On that date, Computervision filed its initial complaint in this case, requesting a refund of $2,808,888.00 in interest paid to the IRS.

On June 23, 1993, the Joint Committee on Taxation approved the tentative NOL carryback from 1985 to 1982, affirming that Computervision had no additional tax liability for the 1982 tax year. In 1993 and 1994, the parties engaged in discovery.

On August 31, 1993, the IRS sent a notice of deficiency to plaintiff for tax years 1983, 1984, 1987 and 1988, as well as a notice of deficiency to CVI for the tax year ending January 31, 1984. On November 4, 1993, plaintiff filed a petition in the United States Tax Court, disputing the deficiencies deter-

---

6. As plaintiff explained, § 6601(d) prevented the application of the 1985 carrybacks to reduce any underpayment for 1982 until the original due date of the 1985 return. The interest resulting from such a restriction on the use of a carryback or other adjustment is referred to as "restricted" interest.

7. According to the defendant, the original claim for refund was based on a tax liability with respect to the settled issues of $2,215,952.00.

The interest that accrued on this amount from March 15, 1983 to April 5, 1988 was $1,254,186.00. The original refund claim indicates that the amount of interest paid by plaintiff was $4,063,074.00. Subtracting $1,254,186.00, the interest attributable to the settled issues, from the amount paid, $4,063,074.00, yields $2,808,888.00, the interest plaintiff claimed is attributed to the DISC issue in its original claim for refund.

mined for 1983, 1984, 1987, and 1988. CVI also filed a petition in the Tax Court, contesting the deficiency determination for the tax year ending January 31, 1984. On March 16, 1995, the present case was stayed pending the decision in the Tax Court.

On March 18, 1996, the Tax Court issued an opinion ruling in Computervision's and CVI's favor on the DISC issue; the court held that CVI was, in fact, qualified as a DISC. *Computervision Int'l Corp. v. Comm'r of Internal Revenue,* 71 T.C.M. (CCH) 2450, 1996 WL 116379 (1996). On February 23, 1998, the Tax Court entered decisions as to Computervision's tax liability for the 1983, 1984, 1987 and 1988 tax years, and as to CVI's tax liability for its taxable year ending January 31, 1984. The IRS chose not to appeal the Tax Court decision with respect to CVI, and therefore, that decision became final on May 25, 1998. The IRS appealed the Tax Court decision with respect to Computervision on grounds unrelated to the DISC issue and Computervision conceded the issues involved in the appeal. On January 7, 1999, the United States Court of Appeals for the First Circuit vacated that decision and remanded the case to the Tax Court for a recalculation of Computervision's tax liability. *Computervision Corp. v. Comm'r,* 164 F.3d 73 (1st Cir.1999). The matter is still before the Tax Court, pending the entry of a decision pursuant to Rule 155 of the United States Tax Court's Rules of Practice and Procedure.

Based on the decisions of the Tax Court and the United States Court of Appeals for the First Circuit, the parties have reached a consensus as to plaintiff's tax liability for 1982 and for the 1983, 1984, 1987 and 1988 years at issue before the Tax Court. The issues remaining in dispute are: the amount of interest properly refundable to plaintiff with respect to the 1982 tax year, the subject of the proceeding before this court, and the

amount of interest properly due from plaintiff to defendant for the 1983, 1984, 1987, and 1988 years at issue before the Tax Court.

Between January 7, 1999, and October 25, 2000, Computervision and the Department of Justice, and Computervision and the IRS, exchanged correspondence relating to the computation of the interest due and refundable. In a letter, dated July 26, 1999, to defendant's counsel, plaintiff's counsel stated that, as a result of an adjustment that had been made by IRS Appeals, the correct taxable income prior to the carryback on which restricted income had been calculated was reduced. In response, in an August 26, 1999 letter, defendant's counsel requested plaintiff's counsel to "prepare a new computation showing the amount of restricted interest to which you believe plaintiff is entitled in view of the changes indicated above."

On September 7, 1999, plaintiff's counsel sent a letter to defendant's counsel, which included a computation purporting to show "the amount of restricted interest owed to the plaintiff." This letter and the attached computation is labeled Joint Exhibit 10. The computation states that the "Total due from CV" is $1,098,213.00, and that the amount "Paid" on "04/28/89" was $4,063,074.00, resulting in an overpayment of $2,964,861.00, the total amount of interest Computervision apparently believed it was entitled to in September of 1999.

On December 28, 1999, as part of a possible settlement of this case, the Tax Division recommended and referred a proposed overpayment of assessed interest of $2,997,-761.42 [8] as of April 28, 1989, plus statutory interest, to the Joint Committee on Taxation, and advised plaintiff's counsel of the referral on the same date. On January 13, 2000, the Office of Review of the Tax Division advised plaintiff's counsel of a possible offsetting adjustment raised by the Joint Committee on Taxation (i.e., whether Computervision had

8. The discrepancy between the Tax Division's proposed overpayment of assessed interest, $2,997,761.42, and the amount Computervision believed it was entitled to, as of September, 1999, $2,964,861.00, can be attributed to a determination by the Office of Review. While evaluating the proposed settlement, the Office of Review determined that plaintiff had understated the to-

tal amount of deficiency interest which it had paid. The total amount of deficiency interest that Computervision paid to the IRS, including the payments made prior to April 28, 1999 was $4,095,974.42, the amount assessed (not $4,063,074.00, the amount in plaintiff's 1999 computation).

paid the interest that accrued on the interest assessment of $4,095,974.42, and on the tax assessment of $37,776.00, between the assessment date (June 3, 1988) and the payment dates (March 7, 1989, March 10, 1989 and April 28, 1989)). On April 24, 2000, the Office of Review sent plaintiff's counsel a revised computation of the overpayment of assessed interest for 1982. Due to the accrual of additional interest on the assessed interest deficiency during the period for which the deficiency was unpaid, the overpayment, in fact, was reduced from $2,997,761.42 to $2,876,828.29.

On May 2, 2000, plaintiff, in a letter to defense counsel and Mr. Markham of the Office of Review of the Tax Division of the Department of Justice, raised, for the first time, the issue of interest netting pursuant to § 6621(d) with respect to its 1982 deficiency and certain overpayments for tax years 1983 and 1984. Specifically, in the letter, plaintiff stated that it was "writing pursuant to Revenue Procedure 99–43, 1999 WL 1019050 to request the application of a net interest rate of zero to certain portions of the interest computation in the captioned case." On that same date, plaintiff sent a similar letter to Charles W. Maurer, the IRS District Counsel in the New England District, who was handling the related cases in the Tax Court.

On August 17, 2000, Mr. Maurer sent a letter to plaintiff's counsel, which referred to plaintiff's May 2, 2000 letter "regarding interest netting." This letter was accompanied by an IRS Memorandum, dated August 1, 2000, which contains interest computations for Computervision prepared by the Appeals Audit Staff. The letter and attached memorandum are labeled Joint Exhibit 19. With regard to tax year 1982, the memorandum states: "Revenue ruling 99–40, 1999 WL 733362 (Sequa)[9] is applied regarding the credit elect to 1983. No claim is necessary." By letter, dated September 12, 2000, Mr. Maurer forwarded the August 1, 2000 computations to the Tax Division.

In a letter dated September 21, 2000, plaintiff's counsel responded to Mr. Maurer's

letter, raising the issue of interest suspension for the first time based, in part, on the August 1, 2000 computations by the Appeals Audit Staff. On October 25, 2000, the Chief of the Office of Review wrote to plaintiff's counsel, disputing the application of interest suspension in this case on the ground that it had not been specifically requested in the original refund claim:

> One feature of the IRS computation for the suit year 1982 with which we are not in agreement is its suggestion that an additional refund or overpayment can be allowed in the instant litigation—over and above that negotiated on the basis of the issues in suitbased upon Revenue Ruling 99–40 *absent the filing of a timely claim for refund raising the issue.*

(emphasis in original). Defendant's counsel repeated this objection in a letter, dated March 14, 2002.

On April 4, 2002, Computervision filed an amended claim for refund specifically requesting the application of interest suspension and interest netting principles in the computation of its refund. On July 9, 2003, an amended complaint was filed in this case, which also requested the application of interest suspension and interest netting in the computation of plaintiff's refund. The amended complaint indicates that plaintiff is now seeking a refund of $3,818,707.55, an amount larger than previously requested.

## DISCUSSION

The defendant has filed a motion requesting dismissal of Computervision's complaint, in part, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and for failure to state a claim. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte,* and even on appeal. *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport*

9. *Sequa Corp. v. United States,* 1996 U.S. Dist. LEXIS 5288, 1996 WL 194323 (S.D.N.Y. Apr.22, 1996).

*News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States,* 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001), *aff'd in part,* 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States,* 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States,* 48 Fed. Cl. 68, 73 (2000); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States,* 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S v. United States,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2002), *cert. denied,* 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consol. Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must

be denied.' "); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the nonmovant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d at 1580), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,*

873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir. 1999); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States,* 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.")

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 n. 10 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.

1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied, reh'g en banc declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

Turning to RCFC 12(b)(6), the court should dismiss a case for failure to state a claim only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Consolidated Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.'"); *RCS Enterps., Inc. v. United States,* 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1), as well as Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould. Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. U.S.,* 49 Fed.Cl. 96, 100 (2001); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995). If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof

to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. at 404–05. "A motion to dismiss under Rule [12(b)(6) ] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d at 1370.

Deficiency interest, which is defined as interest on an amount of unpaid tax, is governed by § 6601, which states: "If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid." While the parties agree that Computervision is entitled to a refund of deficiency interest related to tax year 1982, the parties disagree as to the amount of interest properly refundable to plaintiff.[10] In this suit, Computervision claims that it is entitled to a refund of deficiency interest in the amount of $3,818,707.55 for tax year 1982. The defendant, however, believes plaintiff is entitled to a refund of $2,997,761.42. According to the defendant, this figure represents the amount of deficiency interest associated with the DISC disqualification issue, which served as the basis for plaintiff's original refund claim. The difference between the two figures cited by the parties is $820,946.13, the amount of deficiency interest in dispute. In this case, plaintiff claims it is entitled to this additional amount of interest based on the principles of interest suspension and/or interest netting. Specifically, plaintiff contends that interest on its 1982 tax deficiency should be suspended from March 15, 1983 through August 2, 1985. Additionally, to the extent that interest is not suspended, plaintiff asserts that a net interest rate of zero should be applied for the periods during which its 1982 tax deficiency was offset by overpayments for 1983 and 1984.

**I.   Interest Suspension Claim**

Prior to maintaining a suit to recover improperly assessed taxes or interest, a taxpayer must satisfy the statutory prerequisite of filing an administrative claim with the IRS. Section 7422(a) states:

(a) No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (1988). In other words, the administrative claim must comport with both "the provisions of law ... and the regulations of the [IRS]." *Id.* For a claim to be properly before the court, it must be filed in compliance with the statute of limitations codified at 26 U.S.C. § 6511(a). *United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), *reh'g denied*, 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523(1990). In relevant part, § 6511(a) requires that any

[c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.

26 U.S.C. § 6511(a) (1988).

Failure to comply with § 6511(a) results in the absence of jurisdiction for the court to resolve the claim on the merits, and the suit must be dismissed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims for want of subject matter jurisdiction. *United States v. Dalm*, 494 U.S. at 602, 110 S.Ct. 1361.

---

**10.**  The parties also disagree as to the amount of interest properly due from plaintiff to defendant

for the 1983, 1984, 1987 and 1988 years at issue before the Tax Court.

Treasury Regulation § 301.6402–2 similarly restricts the allowance of refunds to claims that have been filed prior to the expiration of the statute of limitations. 26 C.F.R. § 301.6402–2 (1989). In addition, § 301.6402–2 requires that claims for refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." [11] Treas. Reg. § 301.6402–2(b)(1).

As the United States Court of Claims stated in *Alexander Proudfoot Company,* the requirement for filing an adequate refund claim:

is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

*Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. 219, 227, 454 F.2d 1379, 1383 (1972) (citation omitted) (quoting *Union Pac. R.R. v. United States,* 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968)).

Furthermore, the requirement of a timely claim for refund pursuant to §§ 6511 and 7422 applies to a claim for refund of overpaid assessed interest, as well as a refund of overpaid tax. As the Court of Claims has stated:

All of these [public policy] goals are advanced by adhering to the claim requirement (as well as truncated limitations) even where deficiency interest alone is at stake. There is no greater burden on the taxpayer than where the principal amount

of the tax and the deficiency interest are both challenged. The Service, on the other hand, has just as much need to know that its determination is being attacked.

*Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. at 227–28, 454 F.2d at 1383; *John B. Lambert & Assocs. v. United States,* 212 Ct.Cl. 71, 86, 1986 WL 22198 (1976) ("Even where deficiency interest alone is at stake, timely notice at the administrative level is a prerequisite to later suit."); *Crompton Corp. v. United States,* 2003 WL 21979104, at *4 (2003) ("Claims for refunds of deficiency interest are subject to the same Section 7422 and 6511 limitations as claims for the underlying tax."); *Mobil Corp. v. United States,* 52 Fed.Cl. 327, 331 (Fed.Cl.2002); *Four Star Oil & Gas Co. v. United States,* 49 Fed.Cl. 755, 759, *order modified on reconsideration,* 51 Fed.Cl. 110 (2001).

■ In *Lockheed Martin Corporation,* the United States Court of Appeals for the Federal Circuit noted that § 7422(a) and § 301.6402–2(b)(1) have long been recognized to prevent a taxpayer from substantially varying the legal or the factual basis of an administrative claim when before a court. *Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1371 (Fed.Cir.2000) ("Courts have long interpreted § 7422(a) and Treasury Reg. § 301.6402–2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS."); *accord W. Co. of N. Am. v. United States,* 323 F.3d at 1034. This principle, referred to as the "substantial variance rule," ensures that the IRS has "notice as to the nature of the claim and the specific facts upon which it is predicated," ensures that the IRS has "an opportunity to correct errors," and "limits any subsequent litigation to those grounds that the IRS had an oppor-

---

11. Treasury Regulation § 301.6402–2(b)(1) states in full:

(b) Grounds set forth in claim. (1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each

ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

tunity to consider and is willing to defend." *Lockheed Martin Corp. v. United States,* 210 F.3d at 1371.

The principle of interest suspension is derived from a decision in this court in *May Department Stores Co. v. United States,* 36 Fed.Cl. 680 (1996). Based on that decision, the IRS articulated its policy of interest suspension in Revenue Ruling 99–40:

> In light of the *May Department Stores* decision, the Service has reconsidered the manner in which interest on a subsequently determined deficiency is computed under § 6601(a) when the taxpayer makes an election to apply an overpayment to the succeeding year's estimated taxes. When a taxpayer elects to apply an overpayment to the succeeding year's estimated taxes, the overpayment is applied to unpaid installments of estimated tax due on or after the date(s) the overpayment arose, in the order in which they are required to be paid to avoid an addition to tax for failure to pay estimated income tax under §§ 6654 or 6655 with respect to such year. The Service will assess interest on a subsequently determined deficiency for the overpayment year from the date(s) that the overpayment is applied to the succeeding year's estimated taxes.[12]

Rev. Rul. 99–40, 1999–2 C.B. 441.

As noted, pursuant to § 6511(a), a claim for refund must be filed with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever...expires the later...." In this case, the 1982 return was filed in September of 1983, and the interest at issue was paid between March 7, 1989, and April 28, 1989.

Since the payment date, April 28, 1989, is the later date, under § 6511(a), the statute of limitations for filing a refund claim expired on April 28, 1991, two years after payment.

In August of 1989, Computervision timely filed its original refund claim, requesting a refund of $2,808,888.00 in deficiency interest. The primary legal ground cited by plaintiff for its refund request was that the IRS erroneously determined that its subsidiary, CVI, did not qualify as a DISC.[13] The original refund claim stated: "Computervision disagrees with this conclusion [the IRS' proposed disqualification of CVI] and is hereby making this claim for refund for the portion of the interest paid that is attributable to the disqualification of [CVI] as a DISC for its fiscal year ending January 31, 1983." Similarly, the original complaint filed in this court on April 4, 1990 stated that the "disqualification of International as a DISC was... erroneous and improper" and requested a refund of $2,808,888 "attributable to the disqualification of International as a DISC for its taxable year ending January 31, 1983." Neither the original refund claim, nor the original complaint, mentioned the theory of interest suspension.

As noted, under the doctrine of substantial variance, a taxpayer is precluded from substantially varying the legal or factual basis of an administrative claim when before a court. *W. Co. of N. Am. v. United States,* 323 F.3d at 1034. More specifically, the Federal Circuit has stated:

> With regard to the legal component of the "substantial variance" rule, "[a]ny legal theory not expressly or impliedly contained

---

12. It should be noted, here, that Revenue Ruling 99–40 articulates the principle of interest suspension as it exists today, and was issued in 1999, a decade after the original refund claim was filed in this case. However, at the time of the original refund claim, in 1989, the IRS did apply some form of interest suspension. *See* Rev. Rul. 88–98, 1988–2 C.B. 356, 1988 WL 546823; *Avon Prods., Inc. v. United States,* 588 F.2d 342 (1978). Therefore, theoretically, it was possible for the plaintiff to have made an interest suspension claim in 1989 based on the law in existence at that time.

13. Computervision's original refund claim also listed "Alternative Issues" under its "Grounds

For Refund." Those issues, as explained in the original refund claim, were the following:

> the Examination Report erroneously asserted that the commission paid by Computervision to International for Computervision's 1982 taxable year (the "DISC Commission") was greater than that permitted by the statute as the result of the manner in which Computervision (1) allocated the discount arising from the sale of certain accounts receivable to International, and (2) computed International's export promotion expenses.

In addition, a general ground for refund was listed, which will be discussed below.

in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." The taxpayer similarly may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS.

*Lockheed Martin Corp. v. United States,* 210 F.3d at 1371 (quoting *Burlington N., Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982) (citations omitted)); *see also Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed.Cir.1983) ("[A] ground for a refund that is neither specifically raised by a timely claim for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund." (citations omitted)); *Union Pac. R.R. Co. v. United States,* 182 Ct.Cl. at 103, 389 F.2d at 442; *First Nat'l Bank of Montgomery v. United States,* 150 Ct.Cl. 798, 803, 280 F.2d 818, 821 (1960).

Neither party disputes the fact that Computervision's original refund claim did not explicitly raise the issue of interest suspension. As the defendant underscores, a request for a refund of additional interest based on the theory of interest suspension "was not raised with the Tax Division of the Department of Justice, and with the IRS attorney assigned to defend the Tax Court cases, until late in the year 2000," well after the statute of limitations expired on April 28, 1991. On April 4, 2002, eleven years after the statute of limitations had expired, the plaintiff filed an amended claim for a refund of deficiency interest in the amount of $3,818,707.55, which included the original claim of $2,808,888.00 in interest, plus additional interest under the theory of interest suspension. In the amended refund claim, the plaintiff, for the first time, explicitly asserted "Interest Suspension" as one of the "Grounds For Refund." The amended complaint in this case, filed on July 9, 2003, requested $3,818,707.55 in interest and also requested the application of the doctrine of interest suspension.

The defendant's primary argument is that, "[s]ince the two-year period for filing a refund claim following the last payment of tax ended on April 28, 1991, the statute of limitations for filing a refund claim for restricted interest in excess of the amount attributable to the DISC issue had expired" by the time the plaintiff raised the theory of interest suspension in 2000 and April, 2002. In other words, since the plaintiff failed to articulate its interest suspension claim in its original refund claim in 1989, the claim is barred by the doctrine of substantial variance. According to the defendant, "[p]laintiff's claim for interest suspension is different from, and independent of, the 1989 claim" and, therefore, the plaintiff is attempting to raise "an entirely new legal theory, and the facts to support that theory," twelve years after the statute of limitations barred the filing of a claim for refund. The defendant also contends that the amended refund claim, which does mention the interest suspension claim, but was submitted after the expiration of the statute of limitations, cannot form the basis for the present suit. In response, the plaintiff makes a number of arguments, addressed below.

### A. The Original Refund Claim Includes the Interest Suspension Claim

■ The plaintiff argues that its interest suspension claim is "within the scope of the Original [1989] Refund Claim" and, therefore, is not barred by the doctrine of substantial variance. In support of its contention that the interest suspension claim is within the scope of the original refund claim, the plaintiff makes three sub-arguments.

#### 1. The Interest in Dispute is "Attributable" or "Relates" to the DISC Issue

The plaintiff maintains that the interest suspension claim, even though not specifically claimed in the original refund claim, was adequately raised by its specific request for a refund of interest "attributable" or "relating" to the disqualification of CVI as a DISC. In other words, plaintiff argues that the disputed interest is "attributable," or is "related," to the DISC issue. Therefore, the plaintiff contends that the interest suspension claim is implicitly included in the original refund claim and is not barred by the doctrine of substantial variance.

The defendant, however, maintains that "no part of the additional deficiency interest

plaintiff is claiming either relates to, or is attributable to, the DISC issue, but is attributable to and relates to the issues settled with Appeals [the Boston Appeals Office of the IRS]." The premise of defendant's argument is that the total deficiency interest paid by plaintiff in 1982 can be divided into two amounts: "that attributable to the deficiency resolved in Appeals, as to which no refund claim was filed, and that which was attributable to the DISC issue." More specifically, the first amount of deficiency interest is attributable to certain issues, which were settled with Appeals prior to the filing of the original refund claim, and deficiency interest was assessed with respect to those issues ("the settled issues").[14] The second amount of deficiency interest stems from the IRS' assessment of a tax deficiency on plaintiff based on its determination that CVI did not qualify as a DISC ("the DISC issue"). As noted, the plaintiff prevailed on the DISC issue in related litigation in the Tax Court. As a result, the defendant has conceded all the interest with respect to the DISC issue, an amount of $2,997,761.42. In other words, in the defendant's view, no interest suspension claim exists with regard to the DISC issue because plaintiff is entitled to all of the interest associated with the DISC issue, due to the defendant's loss on that issue in the Tax Court. As defendant has noted, if the DISC issue

is conceded, application of the "correct" method of computing deficiency [i.e., interest suspension] *will not affect by one penny* the deficiency interest that the taxpayer will receive as to [the DISC issue], since plaintiff is entitled to the entire [amount of deficiency interest attributable to the DISC issue] in any event. What plaintiff seeks to recover here is the equivalent of the [amount of deficiency interest] attributable to the application of "interest suspension" to [the settled issues].... The loss in the Tax Court (and the consequent

concession of the DISC issue involved here) effectively resolved this case—or did so until plaintiff began asserting belatedly its interest netting and interest suspension claims.

(emphasis in original).

To demonstrate that the interest currently in dispute does not relate to the DISC issue, but the settled issues, and is not included in the original refund claim, the defendant has directed the court's attention to Joint Exhibit 10 in both its briefs and in oral argument. As indicated above, Joint Exhibit 10 is a letter, dated September 7, 1999, from plaintiff's counsel to defense counsel, in which plaintiff's counsel states that he is enclosing a computation "showing the amount of restricted interest owed to the plaintiff."

In its supplemental brief, the defendant submitted the declaration of Micheline M. Maritz, a recomputation specialist at the Office of Review of the Tax Division, in which Ms. Maritz explained the computations plaintiff sent to the Department of Justice in Joint Exhibit 10. The computation calculates interest on a tax liability of $2,102,421.00. According to Ms. Maritz, the tax of $2,102,421.00 is the tax attributable to the settled issues.[15] Plaintiff appears to agree, citing the tax deficiency of $2,102,421.00 as arising from issues it settled with the Boston Appeals Office of the IRS.

In Joint Exhibit 10, the plaintiff also computed the amount of interest it owed, the amount paid, and the amount overpaid. Specifically, the computation indicates that interest on $2,102,421.00, computed from March 15, 1983 to May 5, 1988, is $1,098,213.00. Therefore, $1,098,213.00, which Ms. Maritz maintains is the amount of interest attributable to the settled issues, is listed as the "Total due from CV." The computation indicates, apparently erroneously, that the amount of interest plaintiff paid on April 28,

---

**14.** According to the plaintiff, the reason that interest associated with issues settled prior to the filing of the original refund claim is in dispute in this case is "because, even though Computervision reached a settlement as to the effect of the settled issues on its tax liability, there was no settlement as to the interest due from Computervision."

**15.** This amount differs from the $2,215,952.00 listed in the plaintiff's original refund claim because, according to the defendant, the tax attributable to the settled issues was revised by agreement.

1989 is $4,063,074.00. It further demonstrates that the difference between the amount of interest shown as paid, $4,063,074.00, and the amount of interest shown as attributable to the settled issues, $1,098,213.00, is $2,964,861.00, which is listed as "Overpayment." According to Ms. Maritz, this figure is the amount attributable to the DISC issue.

However, the actual, total amount of interest assessed and paid as of April 28, 1989 was $4,095,974.42, not $4,063,074.00, as listed in Joint Exhibit 10. As Ms. Maritz points out, the difference between the correct amount paid, $4,095,974.42, and the $1,098,213.00 attributable to the settled issues is $2,997,761.42, which is the amount that should have been listed as "Overpayment" in Joint Exhibit 10 and which defendant asserts is the amount of interest attributable to the DISC issue. Defendant concedes that plaintiff is entitled to this amount, $2,997,761.42, based on the decision of the Tax Court, previously discussed. According to the defendant, the $820,946.13 of deficiency interest currently in dispute is part of the $1,098,213.00 in interest associated with the settled issues, not the DISC issue, and, therefore, this amount is not encompassed within the original refund claim.

As defendant underscores, "[p]laintiff's own computations establish that the additional deficiency interest which plaintiff claims is neither related to, attributable to, nor dependent on the resolution of the DISC issue." In other words, as of September, 1999, the plaintiff's own computations, detailed in Joint Exhibit 10, indicate that it owes $1,098,213.00 in interest, which both parties have contended is attributable to the settled issues, not the DISC issue. In addition, the plaintiff's own 1999 computations indicate that the amount of deficiency interest attributable to the DISC issue is $2,964,861.00, which, as Ms. Maritz explained, actually should be $2,997,761.42, not the $3,818,707.55 that plaintiff is requesting in this action. In short, Joint Exhibit 10 is significant because it demonstrates that, as of September, 1999, ten years after the filing of the original refund claim, the plaintiff, itself, did not contemplate a claim for interest suspension

stemming from the original refund claim. Indeed, the plaintiff concedes this fact, stating that the "simple explanation for the absence of an interest suspension claim in Exhibit 10 is that Computervision's counsel was not aware of the availability of interest suspension at the time of the September 7, 1999 letter." Therefore, since, as of September, 1999, the plaintiff failed to raise the issue of interest suspension, its argument before this court, that such a claim was in fact included in the original 1989 refund claim, is not persuasive.

The policy underlying the requirement that claims for refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," § 301.6402–2(b)(1) is, in part, " 'to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated.' " *Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. at 227, 454 F.2d at 1383 (quoting *Union Pac. R.R. v. United States,* 182 Ct.Cl. at 109, 389 F.2d at 442 (citation omitted)). If the plaintiff did not contemplate an interest suspension claim until the year 2000, it is not reasonable to expect that the IRS had adequate notice of such a claim from an examination of the plaintiff's original 1989 refund claim, which primarily contested the IRS' determination regarding the DISC issue. As the defendant argues, "it is impossible to reject specifically a claim which the taxpayer has not yet thought about and the IRS doesn't know that the taxpayer is asserting." Plaintiff's failure to state explicitly its claim for interest suspension in the original refund claim, as mandated by § 301.6402–2(b)(1), resulted in the lack of any notice to the IRS as to the nature of the claim being advanced by plaintiff.

Although plaintiff's September, 1999 letter serves as sufficient evidence that the original refund claim did not encompass a claim for interest suspension, plaintiff attempts to provide further argument. Regarding the approximately $820,946.13 of interest in dispute, plaintiff has divided this amount into two parts: interest that plaintiff alleges is "attributable" to the DISC issue, $556,355.00,

and interest "related" to the DISC issue, $264,591.00. Plaintiff argues that the $556,355.00 of deficiency interest in dispute "attributable" to the DISC issue should be suspended pursuant to the original refund claim. Plaintiff's calculation of this amount, however, reveals the flaw in its argument. In the appendix of its supplemental brief, plaintiff compiled a table illustrating the "Periods of Interest Suspension Attributable to DISC Issue." The first three columns of this table purport to illustrate the "interest suspension claimed by Computervision (from March 15, 1983, through August 2, 1985, on the entire 1982 deficiency of approximately $2.1 million)." The table indicates that plaintiff is calculating the "interest suspension attributable to [the] DISC issue" by employing $2,102,421.00 as the amount of the tax deficiency upon which interest is accrued. However, as Ms. Maritz's affidavit explains, and the plaintiff, itself, asserts in its supplemental brief, the deficiency of $2,102,421.00 is attributable to the settled issues, or the non-DISC issues. Therefore, if the tax deficiency is attributable to the settled issues, the interest that accrues on that deficiency also must be attributable to the settled issues, not the DISC issue.

In conclusion, as the United States Court of Claims has stated, "deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax... The hair is to go with the hide." *Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. at 227, 454 F.2d at 1382. In other words, in this case, the original refund claim is requesting all interest associated with the DISC tax deficiency that was erroneously assessed by the IRS and defendant is willing to refund that amount. In this court, however, plaintiff requests that interest assessed on a tax deficiency, which was settled prior

to the filing of the original refund claim in this case, be suspended. Since the "hair is to go with the hide," in the words of the Court of Claims in *Alexander Proudfoot Company*, the deficiency interest attributable to the DISC issue corresponds to the DISC tax deficiency and the interest associated with the settled issues corresponds to the tax liability with regard to those issues. Therefore, the original refund claim, which requests interest on the DISC issue, cannot also implicitly include a claim that interest related to the settled issues be suspended. Plaintiff's attempt in the present suit to link the tax liability associated with the settled issues to that associated with the DISC issue fails because the two issues are separate and distinct.[16]

Plaintiff also argues that most of the interest suspension relief that Computervision is seeking would not have been available but for the favorable resolution of the DISC issue. Plaintiff explains this argument by stating that:

if Computervision had not prevailed on the DISC issue in the Tax Court, Computervision's entitlement to interest suspension would have ended as of March 15, 1984— the due date of its 1983 tax return—because the disqualification of CVI as a DISC would not only have created a $7.8 million deficiency for 1982, but would also have created a $9.5 million deficiency for 1983. As a result, the Unapplied Payments would have ceased to be "unapplied" as of March 15, 1984, the due date of the 1983 return, when they would have been required to be applied to Computervision's 1983 deficiency. Although Computervision would still have been entitled to the first twelve months of interest suspension that it is presently seeking, it would not have been entitled to interest suspension for the

16. Indeed, while apparently conceding that the interest in dispute is associated with the settled issues, not the DISC issue, the plaintiff attempts to discount this fact: "it is irrelevant that the disputed interest is associated with a tax *deficiency* attributable to settled issues." (emphasis in original). According to the plaintiff, the defendant "fails to recognize that the computation of interest requires not only a principal amount of indebtedness, but also a period of indebtedness and an interest rate. Thus, the accrual of interest on a tax deficiency is attributable not only to the factors that give rise to the deficiency, but, equally, to the factors that determine the period for which interest accrues, under IRC § 6601, and the rate at which it accrues, under I.R.C. § 6621." While this statement may be true, plaintiff has not demonstrated how these "factors" link its interest suspension claim to the DISC issue and why a tax deficiency attributable to settled issues is related to the DISC issue.

last seventeen months, from March 15, 1984, through August 2, 1985. For that reason, the value of interest suspension for the last seventeen months is directly attributable to the DISC issue.

(footnotes omitted).

In response, the defendant once again maintains that the interest suspension claim is wholly independent of the DISC issue and that "the resolution of the Tax Court litigation on the DISC issue one way or the other would not have affected the interest suspension issue in any way." During the oral argument, defendant explained that, even had plaintiff lost the DISC issue, an interest suspension claim would still exist, if plaintiff filed a timely refund claim, but it would have been greater than the claim presented in this suit: "The interest suspension issue has nothing to do with the DISC issue, win or lose on DISC, there would be an interest suspension issue, assuming a timely claim was filed. It's just that if plaintiff lost the DISC issue, it would have a bigger interest suspension claim." In support of this contention, defendant has submitted a computation of the amount of plaintiff's interest suspension claim had it conceded or lost the DISC issue, calculated by Ms. Maritz, which indicates that the amount would be $932,923.00 as of May 5, 1988.

Moreover, the defendant disputes the plaintiff's legal argument presented above. The computations submitted by defendant in Ms. Martiz's affidavit indicate that plaintiff's statement that "if Computervision had not prevailed on the DISC issue in the Tax Court, Computervision's entitlement to interest suspension would have ended as of March 15, 1984—the due date of its 1983 tax return" is true, but defendant maintains that, if a timely interest suspension claim had been filed, this result would have occurred, regardless of the outcome of the litigation on the DISC issue. Plaintiff, however, erroneously attributes this result to the fact that

the disqualification of CVI as a DISC would not only have created a $7.8 million deficiency for 1982, but would also have created a $9.5 million deficiency for 1983.

As a result, the Unapplied Payments would have ceased to be "unapplied" as of March 15, 1984, the due date of the 1983 return, when they would have been required to be applied to Computervision's 1983 deficiency.

Therefore, plaintiff concludes that: "[a]lthough Computervision would still have been entitled to the first twelve months of interest suspension that it is presently seeking, it would not have been entitled to interest suspension for the last seventeen months, from March 15, 1984, through August 2, 1985."

Defendant, however, argues that, regardless of the outcome of the litigation on the DISC issue (i.e., even if plaintiff won the DISC issue, as in this case), plaintiff would not be entitled to interest suspension relief after March 15, 1984. Specifically, defendant contests plaintiff's claim that "interest suspension is available from the time a credit-elect overpayment is made" to "the time that the taxpayer's payment is applied to an actual or estimated tax liability, including a deficiency determined for a subsequent year...." As defendant's counsel stated in oral argument, "subsequently determined deficiencies [in this case, for tax year 1983] don't affect interest suspension."

Interest suspension occurs when a taxpayer elects to credit an overpayment of income tax reported on the return for year one against estimated tax for year two; this is known as a "credit-elect." Subsequently, a deficiency of income tax is determined for year one and the credit-elect to year two is not "needed" to satisfy the required payments of estimated tax for that year.[17] As Revenue Ruling 99–40 explains:

> When a taxpayer elects to apply an overpayment to the succeeding year's estimated taxes, the overpayment is applied to unpaid installments of estimated tax due on or after the date(s) the overpayment arose, in the order in which they are required to be paid to avoid an addition to tax for failure to pay estimated income tax

17. As defendant explains, the amount with respect to which interest suspension applies is the lower of the deficiency for year one or the credit-elect which is not needed in year two.

under §§ 6654 or 6655 with respect to such year.

Rev. Rul. 99–40, 1999–2 C.B. 441.

As the defendant points out, whether an overpayment for 1982, which the plaintiff elected to credit against the subsequent year's estimated tax, is "needed" to avoid the § 6655 estimated tax penalty for 1983 depends entirely on "the tax shown on the return for the taxable year [1983]," or "the tax shown on the return of the corporation for the preceding taxable year [1982]." [18] IRC § 6655(d). In other words, the deficiency subsequently determined for 1983 due to the IRS' proposed disqualification of CVI as a DISC would not alter the required installments of 1983 estimated tax and, therefore, would not impact the critical question regarding interest suspension: whether the overpayment applied to 1983 was not "needed" so as to avoid estimated tax penalties for that year. Therefore, the plaintiff's contention that its interest suspension claim spanning the period from March 15, 1984 to August 2, 1985 is directly attributable to the

DISC issue is not correct, according to the defendant, since plaintiff would not have an interest suspension claim for that period regardless of the outcome of the DISC issue. The court also concludes that the interest suspension claim is not dependent on the resolution of the DISC issue. In short, the $556,355.00 of interest, allegedly "attributable to" the DISC issue, is not, in fact, attributable to the DISC issue, but is a separate claim for interest that should have been explicitly outlined in the original refund claim.

Of the $820,946.13 of interest in dispute, plaintiff claims that $264,591.00 of that amount is "related to [the] DISC issue," but "attributable to other issues." [19] Indeed, in its supplemental brief, plaintiff fully concedes that the $264,591.00 amount is attributable to the settled issues, not the DISC issue:

> $264,591 of the disputed interest of $820,946 is attributable to factors other than the DISC issue.... Both of those amounts are attributable to, among other

---

18. § 6655 Failure by corporation to pay estimated income tax

(a) Addition to tax
Except as otherwise provided in this section, in the case of any underpayment of estimated tax by a corporation, there shall be added to the tax under chapter 1 for the taxable year an amount determined by applying—
(1) the underpayment rate established under section 6621,
(2) to the amount of the underpayment,
(3) for the period of the underpayment.
(b) Amount of underpayment; period of underpayment
For purposes of subsection (a)–
(1) Amount
The amount of the underpayment shall be the excess of–
(A) the required installment, over
(B) the amount (if any) of the installment paid on or before the due date for the installment.

\*　　\*　　\*　　\*　　\*　　\*

(d) Amount of required installments
For purposes of this section–
(1) Amount
(A) In general
Except as otherwise provided in this section, the amount of any required installment shall be 25 percent of the required annual payment.
(B) Required annual payment
Except as otherwise provided in this subsection, the term "required annual payment" means the lesser of–

(i) 100 percent of the tax shown on the return for the taxable year (or, if no return is filed, 100 percent of the tax for such year), or
(ii) 100 percent of the tax shown on the return of the corporation for the preceding taxable year. Clause (ii) shall not apply if the preceding taxable year was not a taxable year of 12 months or the corporation did not file a return for such preceding taxable year showing a liability for tax.

19. In its supplemental brief, plaintiff contends that "all of the interest paid by Computervision is related to the DISC issue within the meaning of the refund claim...." Plaintiff's assertion that the entire $4,095,974.00 paid by Computervision is "related to [the] DISC issue," (which is more than the $3,818,707.00 it is currently claiming) is a new claim by plaintiff; not only does it not appear in the original refund claim, but it does not appear in plaintiff's amended refund claim, in its response brief, or in plaintiff's position presented at oral argument. Indeed, plaintiff's response brief cites to the original refund claim and states: "Computervision's Original Refund Claim specifically sought a refund of '*that portion of* the interest [paid by Computervision in April, 1989] relating to the [DISC] disqualification issue.'" (emphasis added). Up until Computervision submitted its supplemental brief, plaintiff was arguing that only a portion of the interest paid by Computervision was "related to [the] DISC issue." Although plaintiff's claim in its supplemental brief is that all the interest paid by Computervision is "related to the DISC issue," it is only requesting a portion: $3,818,707.00.

factors, the tax deficiency of $2,102,421 that arose from issues settled by Computervision with the Boston Appeals Office of the IRS. The interest that is attributable to the settled issues *and not also attributable to the DISC issue* is therefore $541,858, the sum of $264,591 and $277,267.

(emphasis in original).

Since the plaintiff, itself, concedes that the $264,591.00 amount of deficiency interest is directly attributable to the settled issues, it cannot be associated with the DISC issue.[20] Therefore, the $264,591.00 amount also could not have been subsumed in the original refund claim.

2. *Plaintiff was contesting the entire computation of deficiency interest for 1982*

The plaintiff also argues that the original refund claim encompasses its interest suspension claim because Computervision is contesting the "entire computation of deficiency interest for 1982." Computervision contends that "by disputing the computation of Computervision's restricted interest for 1982, the

Original Refund Claim was sufficient to place the Service's entire computation of deficiency interest for 1982 at issue, including the application of interest suspension." Based on this argument, plaintiff further asserts that a "request for a refund of erroneously-computed deficiency interest requires a computation of the interest properly owed by the taxpayer, and permits the correction of any and all computational errors that would naturally be discovered in making such a computation."

Plaintiff's argument is apparently based on the "general" ground for refund that appears in plaintiff's original refund claim. The plaintiff's original refund claim listed the "Grounds for Refund." As noted, the first ground for refund stated: "Primary Issue: DISC Disqualification."[21] The third ground was entitled, "General," and stated:

Computervision claims as a basis for the refund of the interest paid with respect to its 1982 taxable year such other grounds as are shown to be appropriate by the tax

---

**20.** While the plaintiff fully concedes that the $264,591.00 amount is attributable to the settled issues, and not the DISC issue, plaintiff argues that this amount is, nevertheless, "related to [the] DISC issue." The plaintiff's argument appears to be based on two errors it believes the IRS made when computing the $4,095,974.00 of restricted interest. First, plaintiff argues that the proposed adjustment of $7,886,409.00 used in the computation was incorrect. It states that "[a]s a result of the Tax Court's decision in favor of Computervision on the DISC issue, the adjustment to Computervision's tax liability should instead have been $2,102,421." Plaintiff states that "[i]t is obvious that the first error relates to the DISC issue because it resulted directly from the IRS's determination that CVI failed to qualify as a DISC." However, both parties identify the $2,102,421.00 amount as related to the settled issues, not the DISC issue. To the extent any error existed, it was the fact that a tax deficiency and corresponding interest were assessed with regard to the DISC issue. Indeed, the defendant has attempted to rectify that error by conceding that plaintiff is entitled to the deficiency interest that corresponds to the DISC issue, $2,997,761.42. However, defendant's acknowledged error with regard to the DISC issue does not affect the tax liability associated with the settled issues, $2,102,421.00, nor the interest assessed on that deficiency.

The second error cited by the plaintiff is that the methodology of the IRS computation was incorrect because "[r]ather than computing interest based on the size of the adjustment to

Computervision's tax liability, the IRS should have computed interest based on the running underpayment balance in Computervision's 1982 tax account, taking into account the suspension of interest due to Computervision's Unapplied Payments, and all of the other payments and credits affecting the account." According to the plaintiff, this error relates to the DISC issue because "in order to *correct* the methodological error in the IRS computation, it was necessary to resolve the DISC issue. Until the DISC issue was resolved, the day-to-day underpayments in Computervision's 1982 tax account could not accurately be computed." (emphasis in original). The plaintiff bases its argument on the government's computations in an April, 2000 letter in which the Department of Justice sent plaintiff revised computations of the refund due to plaintiff: the "government's own computations reflect the fact that an accurate recomputation of the interest due from Computervision required a resolution of the DISC issue...." Despite plaintiff's assertion to the contrary, the government explained in it its brief that the computations cited by plaintiff do not suggest that an accurate recomputation of the interest due from Computervision required a resolution of the DISC issue. The computation merely reflects the fact that an error was made in the computation of interest on the settled issues. The revised computation had nothing to do with the DISC issue, as Ms. Maritz asserted.

**21.** The second ground is discussed above in footnote 13 and is not at issue in this case.

returns, books and records and the Examination Report and related Protest of Computervision and International for their respective tax years ended December 31, 1982 and January 31, 1983.[22]

Plaintiff's argument that its refund claim "has always specifically involved the computation of interest" mischaracterizes the claims in Computervision's original refund claim. The plaintiff never contested the computation of Computervision's restricted interest for 1982. The refund claim did not allege that the method of calculating interest for 1982 by the IRS was erroneous, nor did it even mention the computation of interest. By contrast, the legal issue that formed the basis for plaintiff's refund claim was the IRS proposal to disqualify CVI as a DISC, which resulted in the assessment of a tax deficiency and the accrual of deficiency interest. The plaintiff disagreed with the IRS' decision. Since Computervision contested the IRS' proposed disqualification of CVI as a DISC, it also contested the results of that disqualification, namely, the assessment of deficiency interest with respect to the DISC issue. As defendant states,

> plaintiff was not, as plaintiff alleges "disputing the computation of Computervision's restricted interest for 1982." What plaintiff was disputing was the determination that there was a deficiency for 1982 with respect to the DISC issue.... The loss in the Tax Court (and the consequent concession of the DISC issue involved here) effectively resolved this case.

Since the Tax Court issued a final decision on the DISC issue, finding that CVI was not qualified as a DISC, it is undisputed that the plaintiff is entitled to the interest associated with the DISC dispute. The remaining deficiency interest for the 1982 tax year, to which interest suspension potentially would be applied, stems from other previously settled issues and is a wholly separate issue, unrelated to the DISC issue, as demonstrated above.

Therefore, contrary to plaintiff's assertion that its claim "is sufficiently broad to permit the correction of other errors that are apparent in the same computation, or that would necessarily be considered in the course of correcting the first error," alleged errors in the computation of deficiency interest related to the settled issues would not be included in a legal dispute as to whether CVI qualified as a DISC for tax purposes; nor would such computational errors, as plaintiff alleges, "necessarily be considered in the course" of determining whether CVI qualified as a DISC for tax purposes. Indeed, the plaintiff's own interest computations, as of September, 1999, demonstrate that the interest suspension relief that plaintiff is seeking is not "a necessary step in completing the interest computation that was explicitly placed at issue in the Original Refund Claim," as plaintiff alleges. Therefore, the plaintiff's reliance on cases to support this proposition is misplaced. *Burlington N., Inc. v. United States,* 231 Ct.Cl. at 226–28, 684 F.2d at 869–70 (holding that the use of past retirement data was not at variance with the ground for recovery outlined in its refund claims; the use of past retirement data did not constitute a new or different ground for recovery because the use of past retirement data was required to resolve the plaintiff's original claim); *Red River Lumber Co. v. United States,* 134 Ct.Cl. 444, 446, 139 F.Supp. 148, 149–150 (1956); *Harry Ferguson, Inc. v. United States,* 137 Ct.Cl. 137, 140–41, 146 F.Supp. 836, 839–41 (1956).

Moreover, the general ground for refund cited in the original refund claim, alone, is not "sufficient to place the Service's entire computation of deficiency interest for 1982 at issue, including the application of interest suspension." The case law indicates that a general ground for refund in a refund claim cannot be employed by a taxpayer to assert later in a suit, what is in reality, a wholly separate, independent legal claim. For instance, in *United States v. Andrews,* the taxpayer claimed a refund based on a specific ground and also requested "any greater sum which might be ascertained to be due...." *United States v. Andrews,* 302 U.S. 517, 524,

---

22. In addition, in a footnote on the first page of plaintiff's July 28, 1989 claim for refund, the stated amount to be refunded, $2,808,888.00, is listed, followed by the clause, "or other amount that may be legally allowable."

58 S.Ct. 315, 82 L.Ed. 398 (1938). After the statutory period for raising new claims had expired, the taxpayer requested a greater amount on the basis of the mis-classification of an item as a dividend. *Id.* at 518, 525, 58 S.Ct. 315. The United States Supreme Court held that the additional claim was not encompassed within the original refund claim and the plaintiff's attempted amendment was found to be untimely. *Id.* at 520, 525–26, 58 S.Ct. 315.

In *Mobil Corporation v. United States,* the plaintiff, in its original refund claim, requested a refund of taxes in addition to a general "catch-all" request for interest: "'plus interest on such amount or such greater amount of tax and interest as may be legally refundable on such taxes and interest.'" *Mobil Corp. v. United States,* 52 Fed.Cl. at 332. The court found that this general statement does not state

> the particular ground upon which plaintiff relies to support this suit. The notation alone amounts to nothing more than a plea for all payments to which plaintiff is legally entitled. It does not satisfy the requirement that the taxpayer "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."

*Id.* Therefore, the court concluded that the additional amount plaintiff sought "because of the IRS' alleged miscalculation is based on a separate legal theory that plaintiff was obligated to disclose in its claim." *Id.* at 333.

In addition, the plaintiff in *Mobil Corporation v. United States* promulgated an argument that is similar to the plaintiff's argument in this case. In *Mobil Corporation,* plaintiff stated that general instructions in a particular form, similar to the general ground listed here, required the "IRS to evaluate all potential grounds for a refund regardless of whether the taxpayer reasonably has brought such grounds to its attention." *Id.* at 334. In response to such an assertion, the court found that "[s]uch an interpretation would place the instructions in direct conflict with Treas. Reg. § 301.6402–2(b), the Variance Doctrine." *Id.*

Similarly, in this case, despite plaintiff's contention that its "general claim, together with its specific claim, put the IRS on notice that the restricted interest computation for 1982 was disputed," the interpretation that a claim for deficiency interest attributable to the settled issues is permitted in this suit based on the general ground for refund in the original refund claim would be in direct contravention of Treas. Reg. § 301.6402–2(b). The general refund language does not satisfy the requirement that the taxpayer "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). As noted, "the importance of a proper refund claim is 'to prevent surprise and to give adequate notice to the Service of the nature of the claim....'" *Mobil Corp. v. United States,* 52 Fed.Cl. at 333 (quoting *Alexander Proudfoot Co. v. United States,* 454 F.2d at 1383). The IRS could not possibly infer, nor is it required to infer, from the general, "catch-all" language referring to interest paid with respect to its 1982 tax year that the plaintiff was actually asserting an interest suspension claim with regard to a tax deficiency attributable to issues that were settled prior to the claim. As defendant notes, the

> language is nothing more than an open invitation to the IRS to examine every document relating to plaintiff's year ending December 31, 1982, and the taxable year of its DISC ending January 31, 1983, in order to determine any basis for refund. It is in no sense the precise statement of the facts and the grounds asserted for relief.... The IRS has no obligation to accept such an invitation.

*3. The Interest Suspension Claim Arose During the Process of Addressing the Original Refund Claim.*

Finally, plaintiff argues that, because the interest suspension claim arose "during the process of addressing the original refund claim," the interest suspension claim is not at variance with the original refund claim. The plaintiff is referring to Joint Exhibit 19, which is a letter, dated August 17, 2000, from Mr. Maurer of the IRS Office of Chief Coun-

sel to plaintiff's counsel. The letter states: "This refers to your letter of May 2, 2000, regarding interest netting.... We enclose a copy of interest computations prepared by the Appeals Audit Staff." Attached to this letter is an IRS Memorandum, dated August 1, 2000, addressed to Mr. Maurer from Ms. Marchand, a Restricted Interest Examiner for the IRS, which outlines the interest computations referred to in the cover letter. The computations apply interest suspension to the overpayment in years 1982 and 1983. For 1982, the memorandum stated: "Revenue Ruling 99–40 (Sequa) is applied regarding the credit elect to 1983. No claim is necessary." Based on Joint Exhibit 19, the plaintiff argues that the "fact that the government, and not Computervision, identified the issue demonstrates that the issue was adequately raised by the Original Refund Claim and precludes a finding of variance."

In response, the defendant maintains that the interest suspension issue did not, in fact, arise during the process of addressing the claim for deficiency interest attributable to the DISC issue, the subject of the original refund claim. Rather, it arose in response to the "interest netting" claim raised by the plaintiff in May of 2000. As defendant notes, on May 2, 2000, plaintiff sent two letters: one to Mr. Maurer, IRS District Counsel, with respect to tax years 1983 and 1984, pending in the Tax Court, and a second to defense counsel and Mr. Markham at the Department of Justice with respect to tax year 1982, the subject of the case before this court. As in the letter to the IRS, in the letter to the Department of Justice, plaintiff stated: "We are writing pursuant to Revenue Procedure 99–43 to request the application of

a net interest rate of zero to certain portions of the interest computation in the captioned case." In this letter, the plaintiff raised the issue of interest netting for the first time; it was not included in the original refund claim.[23]

As defendant notes, in response to this letter from plaintiff's counsel, in which plaintiff raises the new claim of interest netting, the IRS made the interest computations that plaintiff is highlighting. This fact is evident from the first line of the IRS' letter, which reads: "[t]his refers to your letter of May 2, 2000, regarding interest netting...." In other words, contrary to plaintiff's assertion, the interest suspension issue did not arise in the process of addressing the original refund claim; that is, in determining the deficiency interest attributable to the DISC issue. The interest suspension issue arose in response to the plaintiff's alternative interest netting claim, which would result in relief identical to the plaintiff's interest suspension claim.[24] Indeed, as plaintiff's own 1999 interest computations make clear, interest suspension with regard to the settled issues is a separate issue from the deficiency interest attributable to the DISC issue.

In sum, the plaintiff's main contention underlying its three sub-arguments, discussed above, is that the original refund claim encompasses the interest suspension claim. The plaintiff attempts to link its interest suspension claim to the DISC issue by arguing, in essence, that they both concern deficiency interest for tax year 1982. However, the fact that plaintiff's belated interest suspension claim and the DISC issue both implicate interest for 1982 is not dispositive. The

---

23. Unlike plaintiff's interest suspension claim, the defendant maintains that the doctrine of variance does not apply to the interest netting claim raised by the plaintiff.

24. Apparently, the IRS' application of interest suspension in response to the plaintiff's claim of interest netting was simply a mistake. Defendant claims that "[i]t is easy to understand how the global interest netting claim triggered consideration of interest suspension.... [E]ach provides relief identical to the other—the reason being that each claim is the converse of the other." Therefore, "the global interest netting claim... was very close to the functional equivalent of a claim specifically requesting" interest

suspension relief, which defendant claims was time barred. Defendant further argues that:

Under these circumstances, with 1982, 1983 and 1984 before her, it is easy to understand how [Restricted Interest Examiner] Ms. Marchand might apply Rev. Rul. 99–40 [interest suspension] (clearly applicable to 1983 and 1984) to 1982 as well, not recognizing that the fact that no formal claim is required does not obviate the necessity that some claim for interest suspension, whether formal or informal, be filed within the time specified by § 6511. Ms. Marchand had no authority to waive the statute of limitations.

322

crucial point is that plaintiff is attempting to link two separate tax deficiencies that both happen to have corresponding deficiency interest for tax year 1982. As previously noted, one tax deficiency is attributable to issues that were settled prior to the filing of the original refund claim. The other tax deficiency relates to the DISC issue, the subject of the original refund claim. As defendant notes, despite the fact that the original refund claim is only requesting interest associated with the DISC issue, it is still related to the DISC tax deficiency:

> [T]he DISC claim asserted in the claim for refund and complaint is just as much a substantive tax claim as it would be had there been no carryback. The fact that the carryback from 1985 eliminated the tax liability for 1982 does not make the April 28, 1989 claim any less a claim for refund of the interest attributable to the DISC issue.

Therefore, when examining the interest in dispute in this case, it is necessary to link the interest to their respective principals because, as the Court of Claims has stated, under the tax laws, "deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax." *Alexander Proudfoot Co. v. United States,* 197 Ct.Cl. at 226, 454 F.2d at 1382.

As demonstrated, plaintiff's interest suspension claim, if permitted, would be applied to the tax deficiency associated with the settled issues, not the DISC issue. Indeed, the parties agree that plaintiff is entitled to all the deficiency interest directly associated with the DISC issue, so an interest suspension claim with regard to that issue is not required. The original refund claim was specific in nature, seeking IRS action on a theory wholly unrelated to Computervision's present claim for additional deficiency interest. It did not address a claim for deficiency interest assessed for plaintiff's 1982 tax year beyond that which may be directly associated with the DISC issue. The original refund claim did not include, explicitly or implicitly, a claim that interest suspension be applied to interest assessed on a deficiency corresponding to issues that were settled prior to the filing of the claim. Therefore, since the in-

terest suspension claim is related to a tax deficiency that is not the subject of the original refund claim, the interest suspension claim is not encompassed within the original refund claim. This finding is consistent with the "IRS's longstanding practice of treating each tax liability as separate and distinct, a position that has been upheld by the federal courts on several occasions." *Fed. Nat'l Mortgage Ass'n v. United States,* 56 Fed.Cl. 228, 231 (2003), *rev'd and remanded on other grounds,* 340 F.3d 386 (Fed.Cir.2003).

The case currently before the court can be analogized to *John B. Lambert & Assocs. v. United States,* 212 Ct.Cl. at 71. In that case, the court held that deficiency interest was not recoverable due to the plaintiffs' failure to raise the interest issue in their administrative claims for refund. *Id.* at 86. Specifically, the court found that the interest claim was not tied to the lawfulness of the principal tax, but was an independent claim for prenotice interest, which, therefore, was "clearly not presented":

> Thus, in reality, the taxpayers had limited their claims for refund to the validity of the underlying tax, and interest, to the extent that it was also being contested, was tied entirely to the lawfulness of the principal tax. An independent claim for "pre-notice" interest was clearly not presented. And, on the basis of what was said in the refund claims, it would be inappropriate to infer notice of such a claim now.

*Id.* at 87. As the defendant argues, the plaintiff "cannot bootstrap its independent claim for deficiency interest based on interest suspension into its earlier specific claim for interest based on the DISC issues. Such a claim was not presented to the IRS in a timely manner." The interest suspension claim is a wholly separate, independent legal theory, which is not "tied entirely to the lawfulness" of the DISC disqualification issue. *Id.*

The finding of substantial variance in this case also is consistent with this court's findings in *Mobil Corporation v. United States* and *Four Star Oil & Gas Company v. United States.* In *Mobil Corporation,* the taxpayer claimed a refund of tax in 1981 and

1983. *Mobil Corp. v. United States,* 52 Fed. Cl. at 328. In 1992, the taxpayer claimed additional interest, contesting the method employed by the IRS in calculating the deficiency interest. *Id.* The court considered whether plaintiff's original claim for refund included the claim for additional interest. *Id.* at 333. Although the taxpayer in *Mobil Corporation* may have been entitled to the deficiency interest directly associated with the amount of the refund itself, the court determined that the portion sought as a result of an "alleged miscalculation is based on a separate legal theory that plaintiff was obligated to disclose in its [earlier] claim." *Id.*

Similarly, in *Four Star Oil & Gas Company,* the taxpayer also argued that an earlier claim for a refund of tax with corresponding interest embraced a later claim for a refund of additional deficiency interest on a different theory. *Four Star Oil & Gas Co. v. United States,* 49 Fed.Cl. at 761–62. In that case, the court agreed with the defendant that "nothing in the claim filed on November 11, 1992 [the earlier claim] raised the issue of the claimed impropriety of the Service's computation of interest...." *Id.* at 762. The *Four Star Oil & Gas* court distinguished *Deluxe Check Printers, Inc. v. United States,* 15 Cl.Ct. 175 (1988), *rev'd in part on other grounds sub nom. Deluxe Corp. v. United States,* 885 F.2d 848 (Fed.Cir.1989), by stating:

> The Federal Circuit did, in fact, find that a tax had been incorrectly assessed and ordered that the tax and the interest paid on that tax be refunded. The taxpayer's entitlement to interest did not depend on the merits of a separate claim, however; the interest refunded was merely the interest that had been erroneously assessed and paid, plus the interest accrued on that overpayment. Here, plaintiff's claim for interest is based on grounds unrelated to its 1992 claim for "abandoned geological and geophysical costs allocated... to its mineral properties." The partial allowance of the 1992 claim did not "automatically" entitle plaintiff to a refund of the deficiency interest assessed for the period March 1, 1981 through December 31, 1982... a timely claim for refund based on a specific claim cannot make an otherwise untimely suit based on an unrelated claim timely.

*Four Star Oil & Gas Co. v. United States,* 49 Fed.Cl. at 762–763 (citations omitted).

Similar to the plaintiffs in *Mobil Corporation* and *Four Star Oil & Gas,* Computervision did not disclose the separate legal theory, that the IRS should apply the principle of interest suspension when calculating deficiency interest related to the settled issues, in its original refund claim requesting deficiency interest associated with the DISC issue. The plaintiff, however, argues that this case is different from *Four Star Oil & Gas Company v. United States* and *Mobil Corporation v. United States,* and more akin to *Harry Ferguson, Inc. v. United States* and *Red River Lumber Company v. United States.* Plaintiff argues that, while "Computervision's original claim specifically and exclusively sought a recomputation of deficiency interest," in *Mobil Corporation* and *Four Star Oil & Gas Company,* "the taxpayers originally sought *tax* refunds, and then each subsequently raised a computational point relating to the *interest* it had paid." (emphasis in original).

The distinction Computervision is attempting to draw appears to be that plaintiff's case can be distinguished because both the original refund claim and the claims before this court concern deficiency interest for 1982. The relevant point of *Mobil Corporation* and *Four Star Oil & Gas Company,* however, is that the court found that the claims that appeared in the plaintiffs' original refund claims were different from the claims that formed the basis of the plaintiffs' suits in court. As a result, those suits were dismissed under the doctrine of substantial variance. The fact that the subject matter of the original refund claims dealt with taxes, while the plaintiffs' later claims dealt with interest, is of no real consequence. Similarly, in this case, the legal ground for the original refund claim for interest was that the IRS made an erroneous determination on the DISC issue, while in the suit before this court, the plaintiff is requesting additional interest on the basis of a new legal theory, interest suspension. As the defendant underscores, Compu-

tervision "seeks belatedly to tack on to a substantive tax dispute [the DISC issue] a new legal issue concerning interest."

Moreover, *Mobil Corporation* and *Four Star Oil & Gas Company* serve to corroborate, rather than detract from, the finding of substantial variance in this case. In both *Mobil Corporation* and *Four Star Oil & Gas Company*, as plaintiff notes, the plaintiffs sought tax refunds, and then subsequently raised an issue with regard to the interest they had paid. *See Mobil Corp. v. United States*, 52 Fed.Cl. at 329; *Four Star Oil & Gas Co.*, 49 Fed.Cl. at 761–762. However, in each case, the interest was directly related to the taxes that formed the bases of the original refund claims. Despite the fact that "deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax," the court found that the claims relating to interest raised new legal theories that were not included in the refund claim and, therefore, were barred by the doctrine of substantial variance. *Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. at 227, 454 F.2d at 1382. In Computervision's case, the interest in dispute relates to a tax deficiency that is wholly unrelated to the interest and corresponding tax deficiency at issue in the original refund claim. Therefore, the contention that variance exists in the present case is, arguably, stronger relative to *Mobil* and *Four Star* because the relationship between two tax deficiencies (that is, the settled issues and the DISC issue) is further removed than that between a tax deficiency and its corresponding interest. To extend the metaphor from *Alexander Proudfoot Company, id.*, "the hair is to go with the hide," *id.* at 1382, this case presents the "hair of two different hides," or the interest of two different tax deficiencies.

Furthermore, contrary to plaintiff's assertion, this case is not similar to *Harry Ferguson, Inc. v. United States*, or *Red River Lumber Company v. United States*. Unlike the present case, in both *Ferguson* and *Red River Lumber Company*, the claims raised before the court were sufficiently related to the original refund claims to be encompassed by them. *Harry Ferguson, Inc. v. United States*, 137 Ct.Cl. at 143, 146 F.Supp. 836;

*Red River Lumber Co. v. United States*, 134 Ct.Cl. at 446, 139 F.Supp. 148. Plaintiff cites to the following language in *Red River Lumber Company v. United States*: "If the Commissioner fails to allow the refund and the case comes to court, we see no reason why errors which do not affect the right of recovery, but only the amount of recovery, should be perpetuated." *Red River Lumber Co. v. United States*, 134 Ct.Cl. at 446, 139 F.Supp. 148. In this case, the failure to apply interest suspension with regard to the settled issues cannot be characterized as an "error[ ] which [does] not affect the right of recovery, but only the amount of recovery" because the plaintiff does not have a right to recover interest associated with the settled issues since the interest suspension claim was not included explicitly or implicitly in the original refund claim. *Id.*

Since the interest suspension claim was not encompassed within the original refund claim either explicitly or implicitly, the original claim could not reasonably provide notice to the IRS of that claim. Indeed, the confusing nature, in some instances, of plaintiff's arguments as to why its original refund claim allegedly includes its interest suspension claim provides support for the IRS regulation requirement that taxpayers specifically articulate each of their claims. Simply stated, an examination of the original refund claim in this case indicates that the primary legal issue in dispute is whether the IRS erroneously determined that plaintiff's subsidiary, CVI, does not qualify as a DISC. Plaintiff's original refund claim simply does not suggest to the IRS that plaintiff is seeking deficiency interest for the 1982 tax year unrelated to the DISC issue, based on the principle of interest suspension. Indeed, plaintiff's interest suspension claim is based, not only on a different legal theory, but on a different tax deficiency, which are facts that plaintiff failed to disclose in its original refund claim.

Additionally, the IRS regulations require that "the taxpayer submit with its tax refund claim the supporting evidence necessary to prove its claim." *Lockheed Martin Corp. v. United States*, 210 F.3d at 1371; *see also* § 301.6402–2(b)(1). The original refund

claim submitted to the IRS does not provide the evidence necessary to support a claim that the IRS erroneously failed to apply interest suspension to interest associated with the settled issues. Plaintiff's original refund claim did not refer to facts, revenue rulings, or case law to support the notion that the principle of interest suspension should have been applied to deficiency interest associated with the settled issues.

Furthermore, the court notes with significance that plaintiff is requesting interest suspension for a period, from March, 1984 to August 2, 1985, that the defendant maintains is not permitted under any circumstances by the current law regarding interest suspension. Therefore, even assuming, *arguendo*, that plaintiff's interest suspension claim was somehow subsumed, covertly, in the original refund claim, as plaintiff now argues, there was simply no way the IRS could have been on notice that plaintiff was requesting a greater degree of interest suspension than the defendant believes the current law permits.[25]

Finally, as late as September of 1999, after the DISC issue had been fully resolved, plaintiff concedes that it still was not claiming interest suspension. This concession serves as additional proof that plaintiff did not contemplate such a claim in its original refund claim. Simply stated, if plaintiff was not making a claim for interest suspension as late as 1999, how could the IRS have had notice of such a claim in 1989, ten years earlier? It is not the responsibility of the IRS to formulate claims for a taxpayer, nor should that agency have to speculate as to what claims plaintiff may or may not be making in its own refund claim, beyond what is actually, explicitly claimed. Presumably, it is for that very reason § 301.6402–2(b)(1) mandates that a taxpayer's claims be explicitly stated.

In short, plaintiff has failed to "set forth in detail each ground upon which a credit or refund is claimed" in its original refund claim and, therefore, the original refund claim was

not "sufficient to apprise the Commissioner of the exact basis thereof." § 301.6402–2(b)(1). The IRS is "entitled to take [the claim] at face value and to examine only the points to which it directed his attention." *United States v. Garbutt Oil Co.*, 302 U.S. 528, 533, 58 S.Ct. 320, 82 L.Ed. 405 (1938). Computervison's present claim for additional interest corresponding to the settled issues on the basis of the principle of interest suspension, therefore, substantially varies from the original refund claim submitted in 1989.

### B. Waiver

■ The plaintiff makes an alternative claim that, if the original refund claim, itself, is insufficient to provide a basis for the present suit, the IRS may have waived its own regulation. Indeed, the United States Supreme Court has recognized that the IRS does possess the authority to waive certain applicable regulations. *See Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945), *reh'g denied*, 325 U.S. 895, 65 S.Ct. 1562, 89 L.Ed. 2006 (1945). As previously noted, § 301.6402–2 provides that a taxpayer must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." The plaintiff contends that "the government can waive the specificity requirement of Treas. Reg. § 301.6402–2 by considering on the merits an issue that is not set forth in detail in the taxpayer's formal refund claim."

According to the plaintiff, the defendant "waived the variance defense (i) by a course of conduct in which it consented to make all proper computational adjustments, and (ii) by allowing interest suspension relief to Computervision *sua sponte*, including an explicit statement that 'no claim [was] necessary' for such relief." (alteration in original). The plaintiff is specifically referring to correspondence it engaged in with the IRS regarding the refund computations after the resolution of the DISC issue in the Tax

---

**25.** The fact that, according to the plaintiff, interest suspension for that additional period would not have materialized without plaintiff's win on the DISC issue is of no consequence because plaintiff had a potential claim for interest suspension regardless of the outcome of the DISC litigation.

Court litigation. During the course of that correspondence, in August of 2000, the IRS responded to a letter from Computervision regarding interest netting with revised interest computations that applied Revenue Ruling 99–40 to suspend the accrual of deficiency interest. In a memorandum attached to the letter, the IRS applied the principle of interest suspension to tax year 1982 and stated "Revenue Ruling 99–40 (Sequa) is applied regarding the credit elect to 1983. No claim is necessary." The Department of Justice received a copy of the IRS computations from the IRS in September of 2000. On October 25, 2000, the Department of Justice sent plaintiff a letter, specifically disputing the application of interest suspension to tax year 1982 "absent the filing of a timely claim for refund raising the issue." (emphasis in original). Despite this rejection of its interest suspension claim by defendant, plaintiff argues that "[i]t is perfectly clear from that statement that the Service had specifically considered the variance issue, and intentionally waived any requirement of a specific claim for interest suspension."

The defendant first disputes the plaintiff's contention that the IRS memorandum, cited above, can be construed as a waiver of the variance doctrine by the defendant. Specifically, the defendant maintains that the August 1, 2000 IRS memorandum cannot constitute a waiver, because, pursuant to Section 5 of Executive Order No. 6166,[26] as of the filing date of the complaint in this case, in 1990, the Department of Justice, not the IRS, had jurisdiction over this litigation. Therefore, according to the defendant, the IRS did not have the authority to waive any claims in this case in August of 2000.

The court need not resolve the issue as to whether the IRS possessed the authority in 2000 to waive the claim specificity requirement in this case, nor whether the IRS' conduct can fairly be characterized as a waiver. Even assuming, arguendo, that the IRS could have waived claims in this suit in 2000,

and that its conduct in this case constituted a waiver, the concept of waiver was simply not implicated in this case and the alleged waiver was outside the statute of limitations.

In *United States v. Andrews,* the United States Supreme Court addressed the waiver of IRS regulations governing specificity of claims. *United States v. Andrews,* 302 U.S. at 525, 58 S.Ct. 315. In *Andrews,* the Supreme Court indicated that where a specific claim, not a general claim, was filed with the IRS, which "pointed unerringly to the items the Commissioner must consider," no waiver of the regulation requiring specificity is implicated. *Id.* In other words, the present case is not a case in which the taxpayer failed to comply with the IRS regulation requiring claim specificity by filing a general or informal claim for refund, and then, subsequently, the IRS affirmatively considered the taxpayer's claim on the specific merits plaintiff allegedly intended. By contrast, Computervision's original refund claim was specific and pointed clearly to the claim the IRS was requested to consider. The original refund claim listed "DISC Disqualification" as the "primary issue" under "grounds for refund." The claim further stated that "the Examination Report erroneously proposed to disqualify the DISC for its taxable year ending January 31, 1983.... Computervision disagrees with this conclusion and is hereby making this claim for refund for the portion of the interest paid that is attributable to the disqualification of International as a DISC for its fiscal year ending January 31, 1983." While the original refund claim "pointed unerringly to the items the Commissioner must consider," it does not notify the IRS of an interest suspension claim with regard to the settled issues. *United States v. Andrews,* 302 U.S. at 525, 58 S.Ct. 315. In this case, the IRS Commissioner did not waive the requirement that Computervision provide the specific grounds and factual details to support its refund claim, for "[t]here was no need for him to do so." *Id.* Simply stated,

---

**26.** § 5. Claims By or Against the United States
As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted following* 5 U.S.C. § 901(2000).

the claim was very specific and waiver is inapplicable under the facts presented.

■ Moreover, even if the concept of waiver were implicated in this case, it would be barred by the statute of limitations. The conduct that plaintiff maintains constituted a waiver occurred in 2000, nine years after the statute of limitations for filing a refund claim expired in 1991. A valid waiver, however, must occur within the applicable statutory time period. As this court stated in *Mobil Corporation v. United States:*

> If a claim does not satisfy the requirements of a particular regulation, but IRS waives that regulation prior to expiration of the applicable limitations period, the claim can be said to have been brought within the statutory limitations period, fully in accordance with "the regulations of the Commissioner."

> Where a purported waiver occurs after expiration of the statutory period, as here, the requirements of I.R.C. § 7422 have not been met. The claim is not "duly filed" because the statutory limitations period for filing a proper claim had expired by the time the actions that allegedly resulted in a waiver occurred. Because plaintiff did not satisfy IRS regulations or secure a waiver of those regulations within the statutory period, plaintiff did not "duly file" a claim "according to the provisions of law . . . and regulations of the Commissioner."

*Mobil Corp. v. United States,* 52 Fed.Cl. at 337 (quoting I.R.C. § 7422) (omission in original); *see also Sicanoff Vegetable Oil Corp. v. United States,* 149 Ct.Cl. 278, 285, 181 F.Supp. 265, 268 (1960) ("Section 322, after prescribing the periods within which claims for refund may be filed, says 'no credit or refund shall be allowed after the expiration of whichever of such periods expires the later.' That statutory language does not leave much leeway for the application of any doctrine of waiver when a valid claim has not been filed in time. . . . In the instant case the Commissioner, in considering the plaintiff's claim, which was based upon a ground which had existed and had not been asserted for six years, was, presumably by mistake, considering a claim long since barred by the statute

of limitations. He was not permitted by law to pay such a claim, and his consideration of it could not enlarge his legal authority."). Since the alleged waiver in this case occurred after the statute of limitations expired, the plaintiff's waiver claim must fail. As this court has noted, "[i]f IRS could waive statutes or regulations related to limitations in these circumstances, it could require the Government to make a payment that legally it was not obligated to pay." *Mobil Corp. v. United States,* 52 Fed.Cl. at 337 (citing *Finn v. United States,* 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887)).

#### C. Amendment

■ Plaintiff also argues that it properly amended its original refund claim to raise the issue of interest suspension, despite the fact that the amended claim was filed in 2002, after the statute of limitations for the filing of claims had expired. In certain instances, amendments to a properly filed claim are permitted after the statutory period has expired. *Mobil Corp. v. United States,* 52 Fed. Cl. at 335. Specifically, to be valid, amendments must comply with two requirements: first, they must be "germane" to the original claim, and second, they must be presented before the original claim has been resolved. *Crompton Corp. v. United States,* 2003 WL 21979104, at *5–6, 2003 U.S. Claims LEXIS 211, at *15 (citing *United States v. Andrews,* 302 U.S. at 525, 58 S.Ct. 315); *Mobil Corp. v. United States,* 52 Fed.Cl. at 335.

#### 1. The "Germane Requirement"

■ A new ground for refund may be raised in an amended claim if the new ground is "germane" to the original, timely filed claim. *Mobil Corp. v. United States,* 52 Fed.Cl. at 335. In *United States v. Andrews,* the United States Supreme Court explained this requirement:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters

328

already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

*United States v. Andrews*, 302 U.S. at 524, 58 S.Ct. 315. Similarly, in *Consolidated Coppermines Corporation v. United States*, the United States Court of Claims stated: "Where the amendment is inconsistent with the former claim, or has injected new and unrelated matter, we have not allowed it, but where it is germane to the original claim and sets up matter discovered in the course of the investigation of the original one, we have allowed it." *Consol. Coppermines Corp. v. United States*, 155 Ct.Cl. 731, 736, 296 F.2d 743, 745 (1961).

The plaintiff's amended claim, which raised the issue of interest suspension with regard to tax year 1982, cannot be characterized as "germane" to the original refund claim concerning the DISC issue. As set forth in detail above, the original refund claim did not raise the interest suspension claim explicitly, nor implicitly, and therefore, the IRS was not notified as to plaintiff's claim. Plaintiff's 2002 interest suspension claim, therefore, did not "merely make[ ] more definite the matters already within [the IRS'] knowledge" from an examination of the original refund claim. *United States v. Andrews*, 302 U.S. at 524, 58 S.Ct. 315.

Also, as explained previously, nor would the IRS "naturally have ascertained" the interest suspension claim during "the course of [its] investigation." *Id.* As in *Mobil Corporation*, the potential amended claim would not render sufficiently specific a "too general claim" because plaintiff's original refund claim was specific as to "the disputed legal issue and the relief sought." *Mobil Corp. v. United States*, 52 Fed.Cl. at 336; *see also Crompton Corp. v. United States*, 2003 WL 21979104, at *6, 2003 U.S. Claims LEXIS 211, at *16–17 (quoting *Mobil Corp. v. United States*, 52 Fed. Cl. at 335). Plaintiff re-

quested a refund of deficiency interest resulting from a legal dispute as to whether its subsidiary qualified as a DISC. The original refund claim did not allege an error in the IRS' calculation of deficiency interest unrelated to the DISC issue. An IRS investigation into the DISC dispute would "naturally" focus only on the legal issues surrounding the disqualification of CVI as a DISC.

The amended refund claim, therefore, raises a new and independent claim for the application of interest suspension to interest related to the settled issues for tax year 1982, which is not "germane" to the claim in the original refund claim. As the United States Supreme Court has stated, plaintiff's position, that "a claim limited to a specified item might be amended out of time to seek a refund on account of other and unrelated items," is untenable. *United States v. Andrews*, 302 U.S. at 527, 58 S.Ct. 315.

### 2. *Timing Requirement*

The fact that the amended refund claim was not germane to the original refund claim effectively disposes of plaintiff's amendment argument. However, the court notes that the amended refund claim also should be rejected because the original refund claim was no longer pending and, as previously noted, the statute of limitations had expired at the time the amended claim was submitted.

An amendment to a refund claim submitted after the expiration of the applicable statute of limitations may only be made if the original claim is still pending. *See Allstate Ins. v. United States*, 213 Ct.Cl. 96, 104, 550 F.2d 629, 633 (1977) ("It is a rule of long standing that once a refund claim has been disallowed, it is not subject to amendment."); *see also Union Pac. R.R. Co. v. United States*, 182 Ct.Cl. at 116–17, 389 F.2d 437 ("The disposition of a taxpayer's refund claim by allowance of the amount requested in full, however, precludes an amendment asserting an additional amount after the expiration of the statutory period for refund."); *Crompton Corp. v. United States*, 2003 WL 21979104, at *5–6, 2003 U.S. Claims LEXIS 211, at *15. Absent such a principle, a taxpayer would be permitted to amend any refund claim in per-

petuity. *See Mut. Life Ins. Co. of N.Y. v. United States,* 72 Ct.Cl. 204, 209, 49 F.2d 662, 664, *cert. denied,* 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535 (1931) ("A claim that has been rejected may not be amended after the statute of limitation has expired. *Sugar Land Railway Co. v. United States,* [71 Ct. Cl. 628,] 48 F.2d 973, decided April 6, 1931, by this court. To hold that a claim for refund made on a specific ground may, after it has been considered and rejected, be amended or enlarged so as to include an entirely different ground ... would be to permit an indefinite postponement of the limitation for bringing suit and would nullify the provisions of the statute as to the time within which claims may be filed and the time within which suit may be brought."); *Mobil Corp. v. United States,* 52 Fed.Cl. at 336.

The original refund claim in this case was filed on August 4, 1989. Before the IRS acted on the original refund claim, plaintiff filed its complaint in this court on April 4, 1990. The amended refund claim was filed in 2002. It is upon these facts that the plaintiff bases its assertion that its "amended claim is timely because it was filed before any final resolution of the Original Refund Claim." In other words, according to the plaintiff, the original refund claim is still pending because it is before this court. However, the reference to a pending claim in the case law is to a claim that is pending before the IRS, not the court. As defendant maintains, "[t]he April 28, 1989 claim was pending before the IRS from that date until suit was filed on April 4, 1990. On that date, the IRS' jurisdiction over the claim terminated. It could not compromise the case; it could not concede the case; it could not litigate the case." *See* Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted following* 5 U.S.C. § 901(2000). In other words, although the original refund claim was filed with the IRS, the IRS was not given the opportunity to resolve the claim because the plaintiff chose to file suit in this court before the IRS had a chance to investigate its claims. Since it is the plaintiff who precluded a final resolution of its original refund claim by the IRS, the plaintiff cannot argue before this court that it can properly amend that original claim out of time because the claim remains pending due to the IRS' perceived failure to act.

The finding of a properly amended claim in this case would permit taxpayers to contravene § 7422(a) directly and avoid a fundamental requirement of administrative law; namely, that the "[t]he only claim which may be presented to a court is one which the agency had the opportunity to consider," as defendant states. As noted above, absent such a principle, a taxpayer would be permitted to amend any refund claim in perpetuity, which is exactly what occurred in this case; the plaintiff amended its claim in 2002, thirteen years after it filed its original refund claim.

In short, the plaintiff cannot, now, raise an interest suspension claim in this court by employing an amended refund claim and arguing that the original refund claim remains pending. The plaintiff's amended refund claim fails to meet the legal standard governing such claims because it is not germane to the original claim, nor was it submitted while the original refund claim remained pending. In conclusion, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims the plaintiff's interest suspension claim is dismissed under the doctrine of substantial variance.

## II. Interest Netting Claim

[redacted] In addition to its interest suspension claim, plaintiff makes an alternative claim for "interest netting." [27]

The "interest netting" dispute in this case stems from § 6621(d), which reads:

(d) Elimination of interest on overlapping periods of tax overpayments [28] and under-

27. Plaintiff uses the term, "interest netting," or "interest rate netting," based on § 6621(d), which refers to the "net rate of interest." The term, "global interest netting," also is used.

28. An "overpayment" exists when a taxpayer "has paid as an installment of the tax more than the amount determined to be the correct amount of such installment." IRC § 6403. The United States Court of Claims explained the concept of overpayment interest as interest that "is paid by the United States, not as a refund of interest previously paid by the taxpayer on demand of the Service, but simply because the Government has had the use of money found to belong to the

payments—To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same tax payer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

Section 6621(d) was enacted in 1998 to eliminate the interest differential, created by the Tax Reform Act of 1986, in which the IRS collected interest on tax under payments by corporate taxpayers at a higher rate than it paid interest on tax overpayments.[29] *Federal Nat'l Mortgage Ass'n v. United States*, 56 Fed.Cl. at 231–232 (discussing the background of the enactment of § 6621(d)). IRC § 6621(d) achieves this result by applying a net interest rate of zero on overlapping underpayments and overpayments of tax. Rev. Rul. 99–43, 1999–47 I.R.B. 579, 1999 WL 1019050. "In enacting § 6621(d), Congress anticipated that in situations in which interest is both payable and allowable by the same taxpayer for the same period, the Secretary will make all reasonable efforts to offset the liabilities, rather than process them separately using the net interest rate of

zero." Rev. Rul.2000–26, 2000–1 C.B. 1257, 2000 WL 675152 (citing H.R. Conf. Rep. No. 105–599, at 256 (1998)).

In this case, plaintiff's interest netting claim serves as an alternative to its interest suspension claim because they provide identical relief; each is the converse of the other. According to the defendant, the

> global interest netting claim contends that interest is allowable on the 1982 overpayment credited to 1983 estimated tax and must be netted against it, thus eliminating the interest charged from March 15, 1983 to August 2, 1985. The interest suspension claim suspends deficiency interest on the same credit-elect ($4,606,074) from March 15, 1983 to August 2, 1985.[30]

In the present case, the "interest netting" issue first arose on May 2, 2000, in a letter from plaintiff's counsel to defendant's counsel and Robert C. Markham, stating: "We are writing pursuant to Revenue Procedure 99–43 to request the application of a net interest rate of zero to certain portions of the interest computation in the captioned case." Plaintiff maintains that, when computing the refund of interest due for its 1982 taxable year, overpayments it made during its 1983 and

---

taxpayer." *Alexander Proudfoot Co. v. United States*, 197 Ct.Cl. at 229, 454 F.2d at 1384. Section 6611(a) states that interest must be allowed and paid on any overpayment in respect of any internal revenue tax at the overpayment rate established under IRC § 6621.

**29.** The House Conference Report to the Internal Revenue Service Restructuring and Reform Act of 1998 explains the effect of this interest rate differential:

> If a taxpayer has an underpayment of tax from one year and an overpayment of tax from a different year that are outstanding at the same time, the IRS will typically offset the overpayment against the underpayment and apply the appropriate interest to the resulting net underpayment or overpayment. However, if either the underpayment or overpayment has been satisfied, the IRS will not typically offset the two amounts, but rather will assess or credit interest on the full underpayment or overpayment at the underpayment or overpayment rate. This has the effect of assessing the underpayment at the higher underpayment rate and crediting the overpayment at the lower overpayment rate. This results in the taxpayer being assessed a net interest charge, even if the amounts of the overpayment and underpayment are the same.

H.R. Conf. Rep. No. 105–599, at 256 (1998).

**30.** It should be noted that, unlike the case of interest suspension, the defendant maintains that the doctrine of substantial variance is not applicable to a global interest netting claim. Revenue Ruling 99–43 explains how to make a claim for interest netting. Generally, requests for the application of the net interest rate of zero in § 6621(d) to interest accruing before October 1, 1998, should be made on Form 843, Claim for Refund and Request for Abatement. In addition, Revenue Ruling 99–43 provides a special procedure:

> No Form 843 is required when a computation of interest using the net interest rate of zero under § 6621(d) for interest accruing before October 1, 1998, is requested by a taxpayer in connection with a return (or returns) of the taxpayer under consideration by any function of the Service.... Rather than filing a Form 843, the taxpayer must furnish a letter or written statement with certain requirements, including a statement that the taxpayer is requesting the net interest rate of zero under § 6621(d).

Rev. Rul. 99–43, 1999–47 I.R.B. 580.

1984 taxable years, during the period from March 15, 1983 through August 2, 1985, can be offset against an underpayment of 1982 taxes that was outstanding during the same period for the purpose of applying the net interest rate of zero under § 6621(d). Defendant argues that plaintiff's interest netting claim should be dismissed for two reasons.

First, the defendant argues that plaintiff's interest netting claim does not meet the requirements of § 6621(d). According to the defendant, the threshold requirement for relief under § 6621(d) is overlapping periods when underpayment interest is "payable" and overpayment interest is "allowable" on equivalent underpayments and overpayments.[31] It is undisputed that deficiency interest was payable for the overlapping period, and was, in fact, paid. Therefore, the question in dispute is whether overpayment interest is "allowable" for the overlapping period.

According to the defendant, interest is not allowable on an overpayment credited to a succeeding year's estimated tax, nor on an overpayment refunded within the 45 day period provided by § 6611(e). The plaintiff disagrees, arguing that the defendant "misreads § 6621(d) itself, in order to create an unnecessary restriction on interest netting." Plaintiff appears to make the argument that interest is "allowable" on its overpayments in this case, pursuant to § 6611, but "no interest is actually *allowed*, because of the restrictions imposed by § 6611(d) and (e)." (emphasis in original).

Section 6402(b) states that: "(b) Credits Against Estimated Tax.—The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year." 26 U.S.C. § 6402(b) (1982). Treasury Regulation § 301.6402–3(a)(5), which implements § 6402(b), provides:

If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment, and no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof.

26 C.F.R. § 301.6402–3(a)(5) (1983 and 1984). Similarly, Treas. Reg. § 301.6611–1(h)(2)(vii) states:

(vii) *Estimated income tax for succeeding year.* If the taxpayer elects to have all or part of the overpayment shown by his return applied to his estimated tax for his succeeding taxable year, no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated tax for such year or the installments thereof.

26 C.F.R. § 301.6611–1(h)(2)(vii) (1983 and 1984).

As the United States Court of Appeals for the Federal Circuit recognized, a distinction must be made between "overpayments" generally, which do incur interest, and "credit elect overpayments," which do not. According to the Federal Circuit:

It is well established that the taxpayer earns no interest on credit elect overpayments. If a taxpayer elects to credit against its estimated liability for one taxable year an overpayment shown on its return for the preceding year, it collects no interest even though at one point it has paid the IRS more than was due.

*Marsh & McLennan Cos., Inc. and Subsidiaries v. United States,* 302 F.3d 1369, 1373 (Fed.Cir.2002) (citing 26 C.F.R. § 301.6611–1(h)(2)(vii)(2001) and *Martin Marietta Corp. v. United States,* 216 Ct.Cl. 47, 572 F.2d 839, 841 (1978)), *reh'g denied, reh'g en banc de-*

---

**31.** Rev. Ruling 99–43 states that: "This revenue procedure does not apply to:... (2) an overpayment or underpayment for any period during which interest on the overpayment or underpay-

ment was not allowable or payable by law (e.g., the 45–day interest disallowance rule under § 6611(e))...." Rev. Rul. 99–43, 1999–47 I.R.B. 580.

**332**

*nied* (2002), *cert. denied*, 538 U.S. 925, 123 S.Ct. 1600, 155 L.Ed.2d 318 (2003). Since the "regulations expressly provide that interest shall not be allowed on credit elect overpayments under section 6611(a)," no interest accrued on plaintiff's overpayment reported on its 1982 return, which was credited to its 1983 estimated tax, nor on the overpayment reported on its 1983 return, which was credited to the 1984 estimated tax. *Id.* at 1379 (citing § 301.6611–1(h)(2)(vii)). Therefore, IRC § 6621(d) is not applicable to this case.

In addition, pursuant to § 6611(e), interest is not allowable on the refund of an overpayment made within 45 days of the filing of the return. 26 U.S.C. § 6611(e) (1982). Section 6611(e), as applicable to returns for 1984, states:

> (e) Income tax refund within 45 days after return is filed.
>
> If any overpayment of tax imposed by subtitle A is refunded within 45 days after the last date prescribed for filing the return of such tax (determined without regard to any extension of time for filing the return) or, in case the return is filed after such last date, is refunded within 45 days after the date the return is filed, no interest shall be allowed under subsection (a) on such overpayment.

26 U.S.C. § 6611(e). Plaintiff's return for 1984 was due on March 15, 1985. As a result of an extension, plaintiff filed its return on July 10, 1985, claiming an overpayment, which the IRS refunded on August 2, 1985. On the basis of the plain language of IRC § 6611(e), defendant argues that, since the overpayment for 1984 was in fact refunded within 45 days, no interest is allowable. The court agrees.

The plain language of the relevant statutes, regulations, and case law supports the defendant's position that interest netting is not applicable to this case. Plaintiff does not provide support for a contrary conclusion. Given that interest is not allowable on an overpayment credited to a succeeding year's estimated tax, nor on an overpayment refunded within 45 days, plaintiff does not qualify for relief under IRC § 6621(d). In light of the court's finding that IRC § 6621(d) is not applicable to this case, the court need not address defendant's second argument with respect to interest netting, that the special rule providing retroactive relief pursuant to IRC § 6621(d) is not applicable to the plaintiff in this case. *See* Pub.L. No. 105–206, § 3301(c)(2), 112 Stat. 685, 741 (1998), amended by Pub.L. No. 105–277, § 4002(d), 112 Stat. 2681, 2681–906 (1998). However, the court notes that the United States Court of Appeals for the Federal Circuit's recent decision in *Federal National Mortgage Association v. United States* supports the defendant's interpretation of the special rule. *See Fed. Nat'l. Mortgage Assoc. v. United States*, 379 F.3d at 1311 ("Accordingly, to the extent the government is correct that both limitations periods—i.e., for the underpayments and the overpayments—were closed on July 22, 1998, the Court of Federal Claims lacked jurisdiction to entertain FNMA's claim or at least its 'jurisdiction to grant relief.'"). Plaintiff's interest netting claim is dismissed.

## CONCLUSION

The plaintiff's interest suspension claim is barred by the doctrine of substantial variance. As a result, this court does not have jurisdiction over the claim. The principle of interest netting, pursuant to IRC § 6621(d), is not applicable to this case. Therefore, the court **GRANTS** defendant's motion to dismiss plaintiff's claims for "interest netting" and "interest suspension." As conceded by the defendant, the plaintiff is entitled to a refund judgment of deficiency interest for tax year 1982 in the amount of $2,997,761.42. The clerk's office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**